**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OFARIZONA

| | |
|---|---|
| Gerald Bouma, et al., | No. CV-10-0267-PHX-NVW |
| Plaintiffs, | **ORDER** |
| vs. | |
| Timothy Trent, a married man; Daisy Flores, his wife, | |
| Defendants. | |

Before the Court is Defendants Timothy Trent and Daisy Flores' Motion to Dismiss (doc. # 5), which is granted in part and denied in part. Also pending is Plaintiffs' Motion to Certify Class (doc. # 6), which is denied as moot.

**I.  Legal Standard**

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it contains sufficient factual matter to permit a reasonable inference that the defendant is liable for the conduct alleged. *Id.* In evaluating a motion to dismiss, courts may consider only the allegations in the pleadings, exhibits attached to the complaint, and matters subject to judicial notice. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007). All factual allegations are accepted as

true and the pleadings are construed in a light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

**II.     Facts Presumed True**

Plaintiffs Gerald Bouma, Linda Miller, Robert Miller, Da'Niel Fresquez, Johnna Lash, Roberto Thompson, Louis Rodl, and Patrick Ward are all current or former employees of the Globe Unified School District ("GUSD") in Globe, Arizona. Defendant Timothy Trent, Superintendent of GUSD, supervised Plaintiffs during each of their respective periods of employment.

**A.     Gerald Bouma**

Gerald Bouma was employed by GUSD as Fine Arts Director and Band Director from July 2008 to April 2009. He accepted the job and moved to Globe after Trent verbally promised him a base salary of $60,500 and several bonuses, including a $3,000 "highly-qualified" bonus, a $1,000 one-time sign-on bonus, an annual $1,000 pay-for-performance bonus, and other discrete bonuses for serving as high school and middle school Band Director. However, when his employment began, his base salary was $500 lower than the promised salary of $60,500 and he did not receive the first half of his $3,000 "highly-qualified" bonus. Upon receiving no response to several inquiries about the discrepancies, Bouma filed a grievance. Trent eventually acknowledged the $500 discrepancy in Bouma's salary but denied the remainder of the grievance. To date, Bouma has not received the $500 difference in base salary, the $3,000 "highly-qualified" bonus, $500 of his one-time sign-on bonus, and his $1,000 pay-for-performance bonus. He has also been denied the other bonuses for serving as high school and middle school Band Director.

When Bouma went to the district office to speak with Trent, he was told that Trent would be out of town for several days. After waiting to speak with Liz Atilano, Supervisor of Human Resources, he left, unsuccessful. He later received an email from Atilano accusing him of being hostile and threatening to district personnel and warning him that she would call the police or file for a protection order if he entered the office

again. He also received a letter from Trent prohibiting him from entering the office unless he had arranged and scheduled a meeting.

Bouma subsequently spoke with other employees about their similar concerns with the hostile, intimidating work environment at the GUSD and invited them to his home to meet with an attorney. When Trent learned of the meeting, he asked Plaintiff Roberto Thompson, who served as Assistant Principal of Globe High School at the time, to watch Bouma's house and prepare a list of employees who attended. Trent warned employees that there would be repercussions for anyone who attended. Out of fear of retaliation, the meeting was cancelled.

### B. Linda Miller

Linda Miller worked for the GUSD from January 2008 until November 2008. Trent recruited her to create and serve as Dean of the College Preparatory Academy ("CPA"), for which the GUSD is responsible. During her employment, Trent prohibited her from discussing the CPA with anyone unless Jennifer Kinnard, Director of Teaching and Learning, was present or he had otherwise authorized such discussion. He also falsely told the school board that she had misappropriated $300,000 in district funds for her personal use when he knew that she had no access to district funds. Finally, he stated in public meetings that she performed her job poorly, that she lacked attention to detail, and that she was incompetent. She eventually resigned.

### C. Robert Miller

Linda Miller's husband, Robert Miller, was also recruited by Trent. Sherrill Stephens, Principal of Globe High School, promised Robert half of the top salary, which, as Miller was led to believe, was $68,000. However, when he received his employment contract, his salary was $2,500 less than the promised amount. His inquiry into the discrepancy was to no avail.

### D. Da'Niel Fresquez

Ms. Fresquez worked for the GUSD from February 2006 to July 2008. While a fourth grade teacher in 2007, Fresquez spoke out at a school board meeting and to a co-worker about the unfairness of the GUSD's new salary schedule. Shortly thereafter, Trent started "visiting rooms" at Copper Rim Elementary, where Fresquez taught. In 2008, Fresquez applied for and was hired as Assistant Dean of the CPA. During her employment as Assistant Dean of the CPA, Jennifer Kinnard verbally reprimanded her, criticized the CPA curriculum, and prohibited her from having meetings with anyone without her knowledge. Fearing for her job and reputation, she decided to quit.

### E. Johnna Lash

Johnna Lash was employed by the GUSD as the Honors English teacher from March 2008 to May 2009. In November 2008, one of Lash's students informed her that the students were individually being asked to write and sign a statement about Lash's teaching and the language she used in class. Upon further inquiry, she discovered that Trent had falsely informed the school board that she "was calling students f—ing idiots." In May 2009, Lash found out that Trent had directed Principal Sherrill Stephens to collect incriminating information about Lash so that he could fire her before the end of the year.

### F. Louis Rodl

Louis Rodl was the Athletic Director at Globe High School. Because a student recruited by Trent was deemed ineligible to play for the GUSD, Globe High School forfeited all games in which that student played. Though Trent had been responsible for recruiting the student, he blamed Rodl for the forfeitures.

### G. Patrick Ward

Patrick Ward served as Defensive Coordinator for the Globe High School football team. When Trent stripped Ward of his coaching duties without explanation, Ward sought reprieve with the school board. However, Trent denied him access to the board and the formal grievance process. In October 2008, Ward was offered a job in Truth or Consequences in New Mexico, but after Trent spoke with the superintendent there, the

job offer was revoked. In December, Ward was offered another job in a school district in New Mexico. Again, after Trent spoke with the superintendent there, the job offer was revoked.

### H. Roberto Thompson

Thompson served as Assistant Principal of Globe High School. Trent put Thompson in awkward positions by asking him to keep a list of employees who attended the meeting at Bouma's house and by directing him to "go after" Linda Miller. He also promised Thompson a bonus of between $5,000 and $10,000 to work as interim Dean of the CPA after Linda Miller resigned, but Thompson never received the bonus. On other occasions, Trent questioned Thompson's staff about his job performance and began to manufacture problems with Thompson's performance as a means to intimidate him. On a particular occasion, he went so far as to call Thompson a "f—ing smartass." In April 2008, Trent informed Thompson that if he did not acquire his principal's certificate within a week, his job position would be advertised. Thompson complied but Trent advertised his position anyway. Trent also demoted Thompson and replaced him with two less qualified people. The demotion was never presented to the school board.

### III. Analysis

Plaintiffs claim that Trent is liable under 42 U.S.C. § 1983 in his personal capacity for violations of their rights to a "good reputation," free speech, assembly, the right to counsel, and the right to petition the government for a redress of grievances. In response, Trent asserts that he is qualifiedly immune. In addition to the section 1983 claim, Bouma has asserted a state law claim of fraud in the inducement and both Johnna Lash and Linda Miller have asserted state law defamation claims against Trent. As explained below, Plaintiffs have failed to state a section 1983 claim. Therefore, the Court reaches neither the merits of Trent's qualified immunity defense nor the merits of Plaintiffs' state law claims, which will be remanded to state court.

A section 1983 suit against a government official in his personal capacity seeks to impose individual liability for actions performed under color of state law. *Hafer v. Melo*,

502 U.S. 21, 25 (1991). Therefore, "to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (emphasis in original).

Here the Amended Complaint sufficiently alleges that Trent was acting under color of state law because it complains of actions undertaken in his capacity as Superintendent of the GUSD. *See* A.R.S. § 15-503(A)(1) (empowering school boards to employ superintendents). However, the factual allegations fail to demonstrate that Trent violated Plaintiffs' federal constitutional or statutory rights.

### A. Right to Counsel

Relying on *Bernhardt v. County of Los Angeles*, 279 F.3d 862 (9th Cir. 2002), Plaintiffs allege that Trent violated their right to consult with an attorney. Because *Bernhardt* addressed only standing and did not reach the merits of the plaintiff's section 1983 claim, reliance on that case is misplaced. *See id.* at 868 n.4. Furthermore, this Court is unaware of constitutionally-protected rights to counsel other than those guaranteed by the Fifth and Sixth Amendments, neither of which is at issue in this case.

### B. First Amendment Rights to Speak Freely, to Associate, and to Petition for Redress of Grievances

The Amended Complaint also alleges that Trent violated Plaintiffs' First Amendment rights to free speech, association, and to assemble and petition the government for a redress of grievances. Because "the primary function of the First Amendment is to facilitate participation in a free political process," First Amendment protection extends to public employees. *Rendish v. City of Tacoma*, 123 F.3d 1216, 1223 (9th Cir. 1997). However, that protection is limited because "the State's interest in regulating the speech of its employees differs significantly from its interest in regulating the speech of its citizenry." *Id.* at 1219 (citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)). Therefore, a public employee's speech is protected by the First Amendment only when made as a private citizen on a matter of public concern. *See Garcetti v. Ceballos*,

1  547 U.S. 410, 421 (2006); *Connick*, 461 U.S. at 147; *Eng v. Cooley*, 552 F.3d 1062, 1070-
2  71 (9th Cir. 2009). The public concern requirement extends equally to alleged violations
3  of the First Amendment rights to associate freely and to petition the government for a
4  redress of grievances. *See Rendish*, 123 F.3d at 1222 (concluding that a public
5  employee's actions must involve a matter of public concern to be protected by the
6  Petition Clause); *Hudson v. Craven*, 403 F.3d 691, 698 (9th Cir. 2005) (applying the
7  public concern requirement to a hybrid speech and association rights case).

8  Whether speech involves a matter of public concern is a question of law based on
9  the "content, form, and context" of a given statement. *Desrochers v. City of San*
10  *Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009) (quoting *Connick*, 461 U.S. at 147).
11  Content is of public concern when it involves "issues about which information is needed
12  or appropriate to enable the members of society to make informed decisions about the
13  operation of their government." *Id.* at 710. In contrast, content is not of public concern
14  when it "deals with 'individual personnel disputes and grievances' . . . of 'no relevance
15  to the public's evaluation of the performance of governmental agencies' . . . ." *Id.*
16  (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)). When the
17  content touches on a matter of public concern, the form and context in which the speech
18  is made may weigh against a finding of public concern. *Id.* at 715. While the form is the
19  manner in which the speech is presented, the context informs the motivations underlying
20  the speech. *Id.* at 714-15.

21  Here the Amended Complaint is wholly devoid of facts sufficient to support a First
22  Amendment violation as to Plaintiffs Robert Miller, Johnna Lash, Louis Rodl, and
23  Roberto Thompson. As to the remaining Plaintiffs, none of the allegations reflect speech
24  or actions involving matters of public concern. Bouma alleges that Trent forbade him to
25  enter the district office without scheduling a meeting, but there Bouma sought redress of a
26  private grievance related to his promised salary and bonuses. Similarly, insofar as Trent
27  denied Ward access to the school board and the formal grievance process, it was to
28  prevent him from airing a private employment grievance in connection with losing his

coaching privileges. To the extent Trent's attempts to thwart Plaintiffs' private meeting at Bouma's home implicate the First Amendment, they too fail to state a claim because the purpose of the meeting was to discuss the hostile work environment and other matters of private, personal interest.

The content of Da'Niel Fresquez's comments about the unfairness of the GUSD's new salary schedule may have touched on a matter of public concern in a very general sense. *See McKinley v. Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (concluding that compensation levels are a matter of public concern because they affect the quality and competence of a government work force). However, the form and context in which they were made indicate that they were a matter of private, personal concern. Fresquez spoke out about the salary schedule at a school board meeting and to another co-worker as opposed to the public at large, which reflects, at most, Fresquez's personal dissatisfaction with her salary. In any event, Fresquez suffered no retaliatory employment action subsequent to making the comments. To state a claim against a government employer for violating the First Amendment after the speech has occurred, a public employee must allege that the employer engaged in retaliatory adverse employment action. *Coszalter*, 320 F.3d at 973. Adverse employment actions are those "reasonably likely to deter employees from engaging in protected activity." *Id.* at 976 (internal quotes omitted). That Trent started "visiting rooms" at Copper Rim Elementary after Da'Niel Fresquez commented on the salary schedule fails to demonstrate action severe enough to constitute adverse employment action. Finally, assuming the CPA is a matter of public concern, nothing suggests that Trent and Kinnard's order for Linda Miller to refrain from discussing the CPA applied to speech made as a private citizen.

In sum, the allegations in the Amended Complaint may best be characterized as private personnel disputes and grievances indicative of an internal power struggle in the workplace. They are of no significant relevance to the public's evaluation of Trent's official competence or the substantive functioning of the GUSD. As the Ninth Circuit has recognized, "the reality that poor interpersonal relationships amongst coworkers might

hamper the work of a government office does not automatically transform speech on such issues into speech on a matter of public concern." *Desrochers*, 572 F.3d at 711. "[W]hile the *First Amendment* invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti*, 547 U.S. at 420 (quoting *Connick*, 461 U.S. at 154) (emphasis in original). Therefore, the Amended Complaint has not adequately stated a section 1983 claim predicated on violations of the First Amendment.

### C. Liberty Interest in "Good Reputation"

Finally, Plaintiffs' allegation that "[s]chool district employees have a constitutionally protected liberty interest in their good name, good reputation, and livelihood" is plainly incorrect as stated. To the contrary, good reputation alone is not a liberty or property interest protected by the Fourteenth Amendment. *See Paul v. Davis*, 424 U.S. 693, 712 (1976); *WMX Techs. v. Miller*, 80 F.3d 1315, 1320 (9th Cir. 1996). Therefore, a mere allegation of injury to reputation fails to state an actionable claim under section 1983. Though the Supreme Court has recognized a "defamation-plus" or "stigma-plus" claim under section 1983, that claim has been neither asserted nor supported. *See Davis*, 424 U.S. at 709; *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999) (citing *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991)).

### IV. Conclusion

Plaintiffs' Amended Complaint fails to state a section 1983 claim upon which relief may be granted. If a defective claim can be cured, the plaintiff is entitled to amend the complaint before the claim is dismissed. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). Here, however, the section 1983 claim cannot be cured because the detailed allegations, taken as a whole, simply do not support a constitutional violation. At most, they reflect employment grievances and general dissatisfaction with a supervisor's management style. Therefore, the section 1983 claim is dismissed without leave to amend. The remaining state law claims will be remanded pursuant to 28 U.S.C. § 1367(c)(3).

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (doc. # 5) is granted as to Count I (42 U.S.C. § 1983) and denied without prejudice as to the remaining state law claims, which the Court does not decide.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Certify Class (doc. # 6) is denied as moot.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing with prejudice Count I (42 U.S.C. § 1983) of Plaintiffs' Amended Complaint and remanding the remaining claims to the Arizona Superior Court, Gila County. The Court expressly finds no just reason for delay in entry of this partial judgment and expressly directs immediate entry of this partial judgment. The Clerk shall terminate this action.

DATED this 14th day of April, 2010.

_____
Neil V. Wake
United States District Judge